RONALD O. KAYE (No. 145051)
DAVID S. McLANE (No. 124952)
MARILYN E. BEDNARSKI (No. 105322)
KAYE, McLANE & BEDNARSKI, LLP
128 North Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 844-7660
Facsimile: (626) 844-7670
E-Mail: rok_kmb@earthlink.net

Attorneys for Plaintiff
THOMAS LEE GOLDSTEIN

BARRETT S. LITT, State Bar No. 45527
LITT, ESTUAR, HARRISON & KITSON, LLP
E-Mail: blitt@littlaw.com
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California  90017
Telephone:  (213) 386-3114
Facsimile:  (213) 380-4585

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THOMAS LEE GOLDSTEIN,<br><br>            Plaintiff,<br><br>    vs.<br><br>CITY OF LONG BEACH; JOHN HENRY MILLER in his individual and official capacity; WILLIAM COLLETTE  in his individual and official capacity; LOGAN WREN, in his individual and official capacity; WILLIAM MacLYMAN; in his individual and official capacity; THE COUNTY OF LOS ANGELES; JOHN VAN DE KAMP in his individual capacity; CURT LIVESAY in his individual capacity; AND DOES 1-10, inclusive,<br><br>            Defendants. | CASE NO. CV 04-9692 AHM (Ex)<br><br>**OPPOSITION TO COUNTY OF LOS ANGELES' MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      March 30, 2009<br>Time:     10:00 A.M.<br>Crt:       Hon. A. Howard Matz |

The Plaintiff, Thomas Lee Goldstein, by and through his attorney of record, Ronald O. Kaye, hereby submits the following Opposition to Defendant County of Los Angeles' Motion for Judgment on the Pleadings.

This Opposition is based on the attached Memorandum of Points and Authorities, and such other evidence and argument as may be presented on behalf of Mr. Goldstein at the hearing on this motion.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: March 16, 2009          By         /S/
                               RONALD O. KAYE
                               Attorney for Plaintiff
                               Thomas Lee Goldstein

# TABLE OF CONTENTS

Table of Authorities Cited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . .   1

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

 A.   AS THE SUPREME COURT RECOGNIZED IN *VAN DE KAMP V. GOLDSTEIN*, THE CONDUCT OF THE DISTRICT ATTORNEY'S OFFICE PLED IN GOLDSTEIN'S COMPLAINT WAS ADMINISTRATIVE. . .   3

 B.   THE SUPREME COURT'S FINDING OF INDIVIDUAL PROSECUTORIAL IMMUNITY OF VAN DE KAMP DOES NOT DETERMINE THE ISSUE BEFORE THIS COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

 C.   THE HOLDING OF THE CALIFORNIA COURTS IN *PITTS V. COUNTY OF KERN* DOES NOT DETERMINE THE ISSUE PENDING BEFORE THIS COURT. . . . . . . . . . . . . . .   8

  1.   *Pitts* Is Wrongly Decided and Is Not Binding on This Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

  2.   *Pitts* Is Distinguishable and Thus Does Not Determine the Issue Before the Court

 D.   BECAUSE VAN DE KAMP AND LIVESAY WERE IMPLEMENTING ADMINISTRATIVE POLICIES UNRELATED TO ANY SPECIFIC PROSECUTION, THEY WERE ACTING ON BEHALF OF THE COUNTY OF LOS ANGELES, NOT THE STATE OF CALIFORNIA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

  1.   California Constitutional and Statutory Provisions Demonstrate that a Prosecutor's Office Generally Acts on Behalf of the County. . . . . . . . . . . . . . . . . . . . . . . .   12
   a.   The California Constitution. . . . . . . . . . . . . . . .   13
   b.   California Statutory Provisions. . . . . . . . . . . . . .   15
   c.   The Los Angeles County Charter. . . . . . . . . . . .   17

  2.   Contrary to the Sheriff's Position in *McMillian*, Post-McMillian Ninth Circuit Cases Demonstrate the District Attorney's Administrative Activities, Such as Those at Issue in this Case, Are Performed on Behalf of the County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

i

# TABLE OF CONTENTS CONT.

3.    The Traditional Five-Factor Analysis Demonstrates that Los Angeles County District Attorney Acted on Behalf of the County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E.    DELIBERATE INDIFFERENCE TO A WIDESPREAD CUSTOM AND PRACTICE TRIGGERS COUNTY LIABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# <u>TABLE OF AUTHORITIES</u>

## **FEDERAL CASES**

*Belanger v. Madera Unified School District*,

    963 F.2d 248 (9th Cir. 1992). .................................................... 20

*Bishop Paiute Tribe*, 291 F.3d 549 (9th Cir. 2001)........................................ 18

*Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005). ................................ *passim*

*Brewster v. Shasta County*, 275 F.3d 803 (9th Cir 2001),. .................... 14, 18

*Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999)...................... 1

*Carter v. City of Philadelphia*, 181 F.3d 339  (3rd Cir 1999). ........................ 1

*Ceballos v. Garcetti*, 361 F.3d 1168 (9th Cir. 2004). ........................... *passim*

*Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002). .......... 14, 18

*Crane v. Texas*, 766 F.2d 193 (5th Cir. 1995)........................................... 9, 10

*Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008)........................ *passim*

*Eaglesmith v. Ward*, 73 F.3d 857 (9th Cir. 1996). ................................... 2, 19

*Giglio v. United States*, 405 U.S. 150 (1972)................................................ 24

*Gobel v. Maricopa County*, 867 F.2d 1201 (9th Cir. 1989)........................... 1

*Hale v. Arizona*, 993 F.2d 1387 (9thCir. 1993). .......................................... 20

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994) ........ 14, 20

*Howlett v. Rose*, 496 U.S. 356 (1990)............................................................ 9

*Hyland v. Wonder*, 117 F.3d 405 (9th Cir. 1997). ....................................... 20

*Lake County Estates, Inc. v. Tahoe Regional Planning Agency*,

    440 U.S. 391. ........................................................................... 21

*McMillian v. Monroe County*, 520 U.S. 781 (1997) . ..................... 1, ,8, 9, 12

*Mitchell v. Los Angeles Community College District*,

    861 F.2d 198 (9th Cir. 1988). ................................................... 19

*Owen v. City of Independence*, 445 U.S. 622 (1980)...................................... 5

# TABLE OF AUTHORITIES CONT.

*Sanders v. City and County of San Francisco,*
    226 Fed.Appx. 687, 692 (9th Cir. 2007)................................. 12

*St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .............................. 23

*Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001). .... 9, 14, 18, 19

*Van De Kamp v. Goldstein,*129 S.Ct. 855, 861 (2009). ........................ *passim*

*Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003)................................................ 1

*Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000). ................. 7, 12

*Womack v. County of Amador,*
    551 F.Supp.2d 1017 (E.D.Cal. 2008) . ........................................... 1, 8, 10

## STATE CASES

*Fickert v. Zemansky*, 176 Cal. 443 (1917). .................................... 13

*Pitts v. County of Kern*, 17 Cal.4th 340 (Cal. 1998) . ........................... *passim*

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) . ........................ 18

*Williams v. Horvath*, 16 Cal.3d 834 (Cal. 1976)................................... 15, 20

## STATE AND COUNTY CONSTITUTIONS AND STATUTES

Cal. Const. Art. 11 § 1................................................................... 13

Cal. Const. Art. 11 § 4................................................................... 13

Cal. Elec. Code §§ 11200 et seq...................................................... 13

Cak, Gov't Code § 825. ............................................................. 15, 20

Cal. Gov't Code § 825. ................................................................. 20

Cal. Gov't Code § 2400. ............................................................... 15

Cal, Gov't Code § 25300. .............................................................. 15

Cal. Gov't Code § 25303. .............................................................. 13

Cal. Gov't Code § 26507. .............................................................. 15

## TABLE OF AUTHORITIES CONT.

Cal. Gov't Code § 26508. .................................................................. 15

Cal. Gov't Code § 28000. .................................................................. 15

Cal. Gov't Code §26504. ................................................................... 15

Cal.Gov't Code § 26520. ................................................................... 15

Cal.Gov't Code § 26527. ................................................................... 15

L.A. County Charter, Art. IV § 12. ................................................... 17

L.A. County Charter, Art. IV § 13. ................................................... 17

L.A. County Charter, Art. IV, § 16. .................................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The County oversimplifies the issue before this Court.  It erroneously concludes that the Supreme Court's decision granting prosecutorial immunity to Van De Kamp and Livesay automatically entitles it to escape all liability for the admittedly "administrative procedures" that resulted in Goldstein's wrongful imprisonment.  (Mot. for Judgment on the Pleadings at 7:25-27.)  But prosecutorial immunity analysis and the sovereign immunity issues raised by *McMillian v. Monroe  County*, 520 U.S. 781 (1997) are not so easily interchanged.

Federal courts have ruled – both before and after *McMillian* – that prosecutor's offices can be held liable under *Monell* for behavior that would be protected by common law prosecutorial immunity under *Van De Kamp v. Goldstein* if the individual prosecutors had been sued.  *See, e.g., Carter v. City of Philadelphia*, 181 F.3d 339, 342 (3rd Cir 1999); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *Webb v. Sloan*, 330 F.3d 1158, 1165 (9th Cir. 2003); *Botello v. Gammick,* 413 F.3 971, 979 (2005); *Gobel v. Maricopa County*, 867 F.2d 1201, 1207 (9th Cir. 1989).

The County also oversimplifies the issue before this Court by implying that the California state court's holding in *Pitts v. County of Kern,* 17 Cal.4th 340 (Cal. 1998) is dispositive and identical to the federal law on this issue (*see* Defendant's Mot. for Judgment on the Pleadings at 4-7).   In fact the federal courts have refused to accept *Pitts'* broad extension of sovereign immunity to all of a district attorney's activities related to a prosecution. *See, e.g., Womack v. County of Amador*, 551 F.Supp.2d 1017, 1027 (E.D.Cal. 2008) (recognizing split).

1

In reality, the question currently before this court is a question of first impression: Did the Los Angeles County District Attorney act as an agent of the State of California when he was deliberately indifferent to the custom and practice of the widespread misuse of jailhouse informants in the Los Angeles County criminal justice system and failed to take any remedial steps, including the creation of an administrative system to disseminate information with regard to jailhouse informants?

The Supreme Court's recent ruling on individual prosecutorial immunities certainly does not answer this question, and no Ninth Circuit precedent is directly on point. Indeed, no federal court in any jurisdiction has held that a district attorney engaged in administrative conduct is an agent of the state government.  In contrast, the Ninth Circuit in  *Ceballos v. Garcetti*, 361 F.3d 1168, 1184 (1183 9th Cir. 2004), rev'd on other grounds, 547 U.S. 410 (2006) and *Botello v. Gammick,* 413 F.3 971, 979 (2005) has specifically held the opposite: a district attorney engaged in administrative conduct is an agent of the county.

A proper application of *McMillian v. Monroe  County* – which requires a thorough review of California constitutional, statutory and local law regarding district attorneys – and of the factors used by the Ninth Circuit in pre- and post-*McMillian* cases, *see, e.g., Del Campo v. Kennedy*, 517 F.3d 1070, 1077 (9th Cir. 2008),  *Eaglesmith v. Ward,* 73 F.3d 857, 860 (9th Cir. 1996), demonstrate that the Los Angeles County District Attorney was acting on behalf of the county in the case at bar.

\\

\\

\\

2

## II

## ARGUMENT

**A.   AS THE SUPREME COURT RECOGNIZED IN *VAN DE KAMP V. GOLDSTEIN*, THE CONDUCT OF THE DISTRICT ATTORNEY'S OFFICE PLED IN GOLDSTEIN'S COMPLAINT WAS ADMINISTRATIVE**

There can be no doubt that the conduct of the Los Angeles District Attorney's Office alleged in Goldstein's Complaint was administrative. The Supreme Court in *Van De Kamp v. Goldstein* stated: "We agree with Goldstein that, in making these claims, he attacks the office's administrative procedures." 129 S.Ct. 855, 861 (2009).

Goldstein's Complaint alleges that the Los Angeles District Attorney's Office violated his constitutional rights by, *inter alia*: failing to create any system to share information about jailhouse informants within the District Attorney's office, being deliberately indifferent to the widespread misuse of jailhouse informants within the county law enforcement system, and acquiescing to a custom of an abusive and perjurious misuse of informants at all levels of county law enforcement. (SAC ¶¶ 146-149.)

In *Van De Kamp v. Goldstein*, the Supreme Court's determination that the conduct in the Complaint is closely related to the judicial phase stemmed from its analysis that prosecutorial judgment "necessarily require[s] legal knowledge and the exercise of related discretion, *e.g.,* in determining what information should be included in the training or the supervision or the information-system management." 129 S.Ct. at 862.  The Supreme Court did not focus on Goldstein's allegation that

the District Attorney failed to implement any type of system at all – conduct which is much less related to the judicial phase of a prosecution.

Further, this Court has correctly recognized that the conduct described in the Complaint was an administrative practice of Los Angeles County:

> The policies and practices that underlie the Fourth Claim for Relief are not only alleged to be "administrative," but they clearly *are* administrative . . . Plaintiff claims that decades-long operations of the largest prosecutor's office in the United States violated constitutional rights of many individuals . . . These allegations are about only the District Attorney's Office of the defendant County of Los Angeles; they certainly do not implicate the State or statewide prosecutive practices.

(July 27, 2005 Order Granting and Denying Motions to Dismiss at 11-12.)

The Supreme Court's ruling in *Van De Kamp v. Goldstein* does not undermine this conclusion and in fact supports this Court's analysis that the conduct of the Los Angeles County District Attorney's alleged in Goldstein's Complaint was administrative conduct. Nor does it change the conclusion that this conduct implicates practices specific to the County of Los Angeles.  The link between purely administrative conduct, applied on a wide-scale, rather than in an individual case, naturally has resulted in all federal cases holding that such conduct is performed on behalf of the local government. *See Ceballos v. Garcetti*, 361 F.3d 1168, 1184 (1183 9th Cir. 2004), rev'd on other grounds, 547 U.S. 410 (2006); *Botello v. Gammick,* 413 F.3 971, 979 (2005).

\\

\\

\\

\\

1

**B.**     **THE SUPREME COURT'S FINDING OF INDIVIDUAL**

2

**PROSECUTORIAL IMMUNITY FOR VAN DE KAMP AND LIVESAY**

3

**DOES NOT DETERMINE THE ISSUE BEFORE THIS COURT**

4

The County does not get an automatic pass for its civil rights violations simply

5

6

because its officials can avail themselves of individual immunity. *See Owen v. City*

7

*of Independence*, 445 U.S. 622, 638 (1980).

8

Such vicarious usurpation of individual immunities would undermine one of

9

the core principles of *Monell* liability:

10

> The knowledge that a municipality will be liable for all of its

11

> injurious conduct, whether committed in good faith or not, should
> create an incentive for officials who may harbor doubts about the

12

> lawfulness of their intended actions to err on the side of
> protecting citizens' constitutional rights.  Furthermore, the threat

13

> that damages might be levied against the city may encourage
> those in a policymaking position to institute internal rules and

14

> programs designed to minimize the likelihood of unintentional
> infringements on constitutional rights. Such procedures are

15

> particularly beneficial in preventing those 'systemic' injuries that
> result not so much from the conduct of any single individual, but

16

> from the interactive behavior of several government officials,
> each of whom may be acting in good faith.

17

18

*Id.* at 651-52.

19

Although in *Van De Kamp v. Goldstein* the Supreme Court recognized that the

20

conduct at issue was "administrative," *Van De Kamp,* 129 S.Ct. at 861, it held that

21

the individual policymakers within the County District Attorney's office were

22

immune for reasons unique to the context of individual immunities – the fear that

23

prosecutors would inappropriately take into account the risk of litigation in making

24

prosecutorial decisions. *Id.* at 863. Such reasoning is "less compelling, if not wholly

25

26

inapplicable when the liability of the municipal entity is at issue." *Owen,* 445 U.S. at

27

652-53.

28

5

In *Van De Kamp,* the focus of the Supreme Court was on the discretion of prosecutors, but Goldstein's deliberate indifference claim implicates no discretion – the District Attorney failed to create any system whatsoever in the face of widespread misconduct unconnected to any particular prosecution.

Although the Ninth Circuit has suggested that the standards used to assess whether a prosecutor's conduct is entitled to absolute prosecutorial immunity or mere qualified immunity may be used "for guidance" in deciding when a prosecutor in California should be considered an agent of the state, *see Ceballos v. Garcetti*, 361 F.3d 1168, 1183 (1183 9th Cir. 2004), rev'd on other grounds, 547 U.S. 410 (2006), this does not mean that prosecutorial immunity analysis and sovereign immunity analysis are identical. In *Van De Kamp,* the Supreme Court concluded that the conduct Goldstein attacks is sufficiently linked to the judicial phase of a prosecution to confer individual immunity. This does not mean that the link is tight enough to require that the prosecutor's office be deemed an arm of the state for sovereign immunity purposes.

In the Ninth Circuit cases that used prosecutorial immunity as a guide for sovereign immunity analysis, this link between the unconstitutional conduct and the judicial phase of the prosecution stemmed from *prosecutorial decisions in particular cases* in the court. The nexus to the judicial phase of individuals engaged in a *prosecutorial function* was much closer than those engaged in an *administrative function*, which is at issue here. In *Ceballos v. Garcetti*, 361 F.3d 1168, 1182-1185 ( 9th Cir. 2004), rev'd on other grounds, 547 U.S. 410 (2006), the fact that the retaliation complained of by Ceballos included some conduct that was intimately associated with a judicial phase of the criminal process (specifically his removal from a murder prosecution) was not sufficient to confer Eleventh Amendment

immunity; his actions were overall those of the County, not the state.  In *Weiner v. San Diego County*, 210 F.3d 1025, 1026-1027 (9th Cir. 2000), the immunized conduct was the filing of charges – an clear prosecutorial act. In this case, the total *failur*e to create an information management system to disseminate information about informant benefits, although now held to be linked to the judicial phase under *Van de Kamp v. Goldstein*, is far more attenuated.

The Ninth Circuit has been very explicit that the Eleventh Amendment and absolute immunity analyses are separate ones. In *Botello v. Gammick,* 413 F.3d 971 (9th Cir. 2005), *supra*, the individual prosecutor defendants allegedly refused (among other things) to prosecute any cases in which Botello was involved in retaliation for his whistle-blowing activities; this conduct was found to be absolutely immune because it was intimately associated with the judicial phase of the criminal process. *Id.* at 977. Washoe County argued that "under Nevada law, when Gammick [one of the absolutely immune prosecutors] made the decision not to prosecute cases initiated by Botello, he was acting as a policymaker on behalf of the state and not the County." *Id.* at 979. The Court found the County's argument "unavailing in two respects." First, it was foreclosed by the Ninth Circuit's earlier conclusion that "under Nevada law, 'principal district attorneys are final policymakers for the municipality with respect to the conduct of criminal prosecutions.'" (quoting *Webb v. Sloan*, 330 F.3d 1158, 1165 (9th Cir. 2003). "Second, other than adopting the non-prosecution policy, Gammick's conduct was administrative, not juridical in nature," a proposition not rebutted by the County. *Id*.

Thus, individual immunity can only be used as a guideline to *Monell* sovereign immunity questions.  It is not the end of the analysis and may not be automatically substituted for sovereign immunity.  As the Ninth Circuit addressed in

*Botello*, after the individual prosecutor was found to not be absolutely immune based on his administrative conduct, the court took the necessary additional step and examined Nevada law to assess whether the prosecutor was acting on behalf of the State or the individual County. *Botello*, 413 F.3d at 979.

Similarly, to determine whether the District Attorney's Office is entitled to sovereign immunity in the case at bar, this Court must perform an independent analysis of state law.

## C.   THE HOLDING OF THE CALIFORNIA COURTS IN *PITTS V. COUNTY OF KERN* DOES NOT DETERMINE THE ISSUE PENDING BEFORE THIS COURT

Defendant County's augment relies heavily on the California Supreme Court's decision in *Pitts v. County of Kern,* 17 Cal.4th 340 (Cal. 1998). (*See* Defendant's Mot. for Judgment on the Pleadings at 4-7.)

But *Pitts* – which has been explicitly rejected by the Ninth Circuit, *see, e.g., Womack v. County of Amador*, 551 F.Supp.2d 1017, 1027 (E.D.Cal. 2008) (recognizing split) – is not binding on this Court and is not dispositive of the matter at hand.

### 1.   *Pitts* Is Wrongly Decided and Is Not Binding on This Court

Although *McMillian* instructs federal courts to look to state law when determining whether an official is protected by sovereign immunity, "this is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy." *McMillian* 520 U.S. at 786.  "If a State's designation sufficed to answer the federal question at issue, 'States would then be free to nullify for their own people the legislative decisions that

Congress has made on behalf of all the People.'" *McMillian*, 520 U.S. at 798-99 (Ginsburg, J., dissenting).

Defenses to civil rights law suits are a question of federal law. *Howlett v. Rose*, 496 U.S. 356, 376 (1990). Thus, the designations that a state attaches to public officials via court decisions and laws are not dispositive of that official's status for the sake of a federal civil rights lawsuit. *McMillian*, 520 U.S. at 798 (Ginsburg, J., dissenting); *Streit v. County of Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001)(the "question of municipal liability under § 1983 is a question of federal law"; applied in the context of determining whether LA Sheriff was a county policymaker for the jails and concluding he was, contrary to state court decisions).  Applying this principle to a situation where state law specifically designated the district attorney as a state official, the Fifth Circuit explained, "even were he a State official in every sense, called so in State law and designated by the State to make policy for its other creature, the county, our answer would likely remain the same; county responsibility for violation of the Constitution cannot be evaded by such ingenious descriptions." *Crane v. Texas*, 766 F.2d 193, 195 (5th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985).

Thus, this Court is required to perform its own analysis of state law provisions alleged to support claims of sovereign immunity, and not blindly accept the proclamation of the state court in *Pitts*. Despite this, the County's entire analysis of the California law consists of nothing except a citation to *Pitts*. (Defendant's Mot. for Judgment on the Pleadings at 5:24-28.)

In fact, the County repeatedly blends block quotes from *Pitts* with citations to the Ninth Circuit's opinions in *Weiner* and *Ceballos* (D.'s Mot. for Judgment on the

9

Pleadings at 4-7), creating the incorrect impression that the Ninth Circuit has blindly followed *Pitt*s.

Nothing could be further from the truth. In *Weiner*, the Ninth Circuit conducted its own independent analysis of California constitutional and statutory provisions, *id.* at 1029-30, in order to determine if "a California district attorney is a state officer when deciding whether to prosecute an individual,"[1] *id.* at 1031. Similarly, in *Ceballos* the Ninth Circuit contradicted *Pitts* by asserting that "[d]istrict attorneys performing investigatory and other functions . . . are officers of the county," *Ceballos*, 361 F.3d at 1183; *see also Womack v. County of Amador*, 551 F.Supp.2d 1017, 1027 (E.D.Cal. 2008) (recognizing split between Ninth Circuit and *Pitts* regarding investigative functions of California district attorney).

The broad language of *Pitts* – granting sovereign status to the district attorney "when training personnel for and when developing policy regarding the preparation for prosecution," 17 Cal.4th at 366 – conflicts with the Ninth Circuit's holdings that a Prosecutor's Office does not benefit from sovereign immunity for administrative and investigative conduct.

For these reasons, *Pitts* is not binding on this Court and is wrongly decided. Thus, this Court should reject the County's analysis of state law which is based entirely on *Pitts*.

**2.** **_Pitts_ Is Distinguishable and Thus Does Not Determine the Issue Before the Court**

Moreover, *Pitts* is distinguishable from the case at bar. Unlike the plaintiffs in *Pitts* (and the plaintiff in *Weiner*), Goldstein does not seek to hold the County liable

---

[1]   This is not of course the issue in the case at bar.

for the District Attorney's role in initiating or executing a *specific* prosecution.[2] *Pitts,* 17 Cal.4th  at 345-46.  In *Pitts,* the California Supreme Court held that when a California district attorney prepares to prosecute and prosecutes a defendant for a specific crime or establishes policy and trains deputy district attorneys regarding the prosecution of a specific crime, the district attorney is acting as a state officer. *Id.* 345-46, 366.  Goldstein's claim, in contrast, focuses on conduct unrelated to any specific prosecution – a lack of policy regarding the dissemination of information within an office – and on deliberate indifference to a widespread custom of jailhouse informant misuse unrelated to any specific prosecution.

Whether by design or inadvertence, the conduct at issue is the product of an administrative policy that ultimately had an effect on numerous prosecutions, not a prosecutorial strategy designed to enforce the law. This is in sharp contrast to *Pitts* where, due to the fact that misconduct stemmed from a single incident, *id.* at 345-46, changes in administrative procedures would have been powerless to prevent the deprivation of the plaintiffs' rights.

**D.    BECAUSE VAN DE KAMP AND LIVESAY WERE IMPLEMENTING ADMINISTRATIVE POLICIES UNRELATED TO ANY SPECIFIC PROSECUTION, THEY WERE ACTING ON BEHALF OF THE COUNTY OF LOS ANGELES, NOT THE STATE OF CALIFORNIA**

It is a question of first impression whether the Los Angeles County District Attorney acted as an agent of the State of California or the County of Los Angles when he was deliberately indifferent to the custom and practice of widespread

---

[2]    *Pitts* involved several related prosecutions which stemmed from the same alleged child sex abuse ring.  Ultimately, the convictions against the defendants were vacated.

misuse of jailhouse informants in the Los Angeles County criminal justice system and failed to take any remedial steps, including the creation of an administrative system to disseminate information with regard to jailhouse informants. Because this is a question of first impression, the factors for making this determination must be carefully analyzed.

Although it is clear that when California district attorneys *initiate* a prosecution, they are acting on behalf of the state, *Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000); *Sanders v. City and County of San Francisco*, 226 Fed.Appx. 687, 692 (9th Cir. 2007) ("[w]hen deciding whether to prosecute an individual" a California D.A. acts on behalf of state), this is not the violation alleged in Goldstein's Complaint.

The Supreme Court's ruling in *McMillian* requires careful analysis by this Court of the role – state or local – that the district attorney is given by the State of California when performing the acts alleged in the Complaint. 520 U.S. at 785-86. A critical question is whether the state government exercises control and supervision over the district attorney's office. *See, id.* at 788-93 (emphasizing control of state government throughout analysis of Alabama Sheriff). An analysis of the relevant law shows that, on balance, a California district attorney acts as a local policymaker when setting administrative policies and failing to act in the face of widespread unconstitutional customs, even if that conduct affects prosecutions such that the prosecutors may have individual absolute immunity.

1.      **California Constitutional and Statutory Provisions Demonstrate that a Prosecutor's Office Generally Acts on Behalf of the County**

In California, the ultimate responsibility for supervision of the district attorney lies with the voters of the county, who may initiate recall if the situation requires.

12

Cal. Elec. Code §§ 11200 et seq; *Fickert v. Zemansky*, 176 Cal. 443

(1917)(analyzing San Francisco County Charter to determine validity of recall

petition aimed at district attorney).  The district attorney is classified as a County

office under California law. *See* Cal. Const. Art. 11, § 1 (general law counties); Art.

11, § 4(c) (charter counties) (charters shall provide for an "elected sheriff . . .

compensation, terms and removal"); Govt. Code § 2200(b).  Short of recall,

oversight of the district attorney is explicitly in the hands of the county board of

supervisors:

> The board of supervisors shall supervise the official conduct of
> all county  officers. . . . It shall see that they faithfully perform
> their duties, direct prosecutions for delinquencies, and when
> necessary, require them to renew their official bond, make reports
> and present their books and accounts for inspection.

Cal. Gov't Code § 25303.

### a.     The California Constitution

The California Constitution strongly suggests that a California district attorney

should generally be considered a local government official. The words "District

Attorney" are only mentioned three times in the California Constitution – twice

under Article 11 (subtitled "Local Government"), which lays out the structures of

local government. Cal. Const. Art. 11 § 1(b) (listing district attorneys as a type of

local official); Cal. Const. Art. 11 § 4(c) (indicating that county charters must

include "[a]n elected sheriff, an elected district attorney, an elected assessor, other

officers, their election or appointment, compensation, terms and removal").

The district attorney is also mentioned in Article 5 § 13 of the California

Constitution, a section which provides the Attorney General with a method to assert

power over all law enforcement officers including district attorneys and sheriffs.

This lone section is singularly focused on by the California Supreme Court in *Pitts* to support an overly broad application of sovereign immunity to almost everything a district attorney does. *Pitts*, 17 Cal.4th at 363. But this section merely allows the Attorney General to assert some potential level of check on a district attorney.  It does not involve the "real, immediate control and oversight" that the U.S. Supreme Court has deemed to be critical in analyzing sovereign immunity. *Hess v. Port Authority Trans-Hudson Corp*., 513 U.S. 30, 62 (1994) (dissent) ("inquiry should turn on real, immediate control and oversight, rather than on the potentiality of a State taking action to seize the reins.").

More importantly, this section relating to the Attorney General applies with equal force to California sheriffs, whom the Ninth Circuit has consistently held to be unprotected by sovereign immunity.  *See Brewster v. Shasta County*, 275 F.3d 803, 807-808 (9th Cir 2001), *cert. denied sub nom.*, *Shasta County v. Brewster*, 537 U.S. 814 (9th Cir. 2002); *Streit v. County of Los Angeles*, 236 F.3d 552, 555-556 (9th Cir. 2001); *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189-1192 (9th Cir. 2002).

The facts of the case at bar drive home the spectral nature of the Attorney General's alleged control over county district attorneys.  Unlike what the California Supreme Court suggests in *Pitts*, neither the state Attorney General nor any other state official actually provided the oversight required to remedy the problem in the Fourth Claim for Relief.  Rather, the massive, systemic problem was addressed by the *County* grand jury.  Only after the issue about jailhouse informants' misrepresentations had been brought out in the public forum through the Grand Jury Report did the county district attorney's office attempt to create an administrative remedy by proposing a central index for informants. (SAC ¶ 101.)

14

### b.    California Statutory Provisions

The provisions for the California statutory scheme that define the role of the district attorney are located in title three of the Government Code, subtitled "Government of the Counties." This title lists district attorneys as "officers of a county," along with such clearly local officials as the county sheriff and the members of the board of supervisors. Cal. Gov't Code § 2400(a), (b), (o).

Other sections of this title show that the district attorney is funded by and answerable to the county treasury, Cal. Gov't Code § 28000, Cal. Gov't Code § 26504 (All money received by the district attorney received in his official capacity must be paid over to the county treasurer), require the district attorney to render legal service to the county without a fee, Cal.Gov't Code § 26520, defend the county treasurer and auditor from legal claims, *id*. § 26525, and bar the district attorney from in anyway advocating or presenting any claims or lawsuits against the county. Cal.Gov't Code § 26527.

Moreover, the county is required to defend and indemnify the district attorney in an action of damages, Cal. Gov't Code § 825; *see also Williams v. Horvath*, 16 Cal.3d 834, 847 (Cal. 1976), and the county board of supervisors sets compensation for district attorneys. Cal. Gov't Code § 25300.  This is in direct contrast to the Alabama sheriffs in *McMillian* whose salaries are set by the state legislature. 117 S.Ct. at 1739 (citing Ala. Code § 36-22-16).[3]

_____

[3]  Other provisions indicating the status of the district attorney as a county officer include:
Cal. Gov't Code § 26507 (although a district attorney may bring a civil cause of action outside his/her county, the district attorney may only do this if the action is "of benefit to his own county"); Cal. Gov't Code § 26508 (if a district attorney provides services to anther county, the "county provided with such services shall compensate

Generally the county board of supervisors has supervisorial authority over the district attorney, except to the extent that the district attorney is the final policymaker – not the Attorney General – with regard to county prosecutions. Cal. Gov't Code § 25303.[4] Notably the provisions of Government Code section 25303 are precisely parallel in respect to the sheriff and the district attorney's independent authority as final policymakers with regard to county law enforcement policy.  As noted above, California sheriffs have consistently been held to be county officials by the Ninth Circuit.

_____

the county providing the services"); Cal.Gov't Code § 26520.5. (the district attorney may provide legal services to a county fair "with the approval of the county board of supervisors."); Cal.Gov't Code § 26526 (if there is no county counsel the district attorney is deemed the legal counsel of the county board of supervisors); Cal.Gov't Code § 26528 (the county board of supervisors may order the district attorney to bring a suit for nuisance); Cal.Gov't Code § 26541 (the district attorney may defend a county from the State of California in a state eminent domain proceeding).

[4] Government Code Section 25303 reads in full:
The board of supervisors shall supervise the official conduct of all county officers, and officers of all districts and other subdivisions of the county, and particularly insofar as the functions and duties of such county officers and officers of all districts and subdivisions of the county relate to the assessing, collecting, safekeeping, management, or disbursement of public funds.  It shall see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary, require them to renew their official bond, make reports and present their books and accounts for inspection. This section shall not be construed to affect the independent and constitutionally and statutorily designated investigative and prosecutorial functions of the sheriff and district attorney of a county. The board of supervisors shall not obstruct the investigative function of the sheriff of the county nor shall it obstruct the investigative and prosecutorial function of the district attorney of a county. Nothing contained herein shall be construed to limit the budgetary authority of the board of supervisors over the district attorney or sheriff.

### c.     The Los Angeles County Charter

The Los Angeles County Charter also weighs strongly in favor of understanding the District Attorney to be a County official. The Charter specifically designates the District Attorney and the Sheriff as County officers: "The elective County officers other than members of the Board of Supervisors shall be: Sheriff, District Attorney and Assessor." L.A. County Charter, Art. IV § 12. The Charter also dictates the length of the District Attorney's  term of office (L.A. County Charter, Art. IV § 13), imposes term limits on the District Attorneys (L.A. County Charter, Art. IV § 12) and provides that the Board of Supervisors will appoint the temporary District Attorney if there is a vacancy (L.A. County Charter, Art. IV, § 16). Moreover, hiring in the District Attorney's Office is regulated by the Los Angeles County civil service system. L.A. County Charter, Art. IX § 33.

Again it should be noted that the provisions dealing with the Sheriff and the District Attorney are largely identical.

### 2.     Contrary to the Sheriff's Position in *McMillian*, Post-McMillian Ninth Circuit Cases Demonstrate the District Attorney's Administrative Activities, Such as Those at Issue in this Case, Are Performed on Behalf of the County

Post-*McMillian* federal case law from the Ninth Circuit holds that, when the district attorney sets administrative policy, it acts on behalf of the county. *See Del Campo v. Kennedy*, 517 F.3d 1070, 1073-74 (9th Cir. 2008); *Ceballos v. Garcetti*, 361 F.3d 1168, 1184 (9th Cir. 2004).

> The district court held that the bad check diversion program was one of several county-based diversion programs created by the California legislature, see generally [citation omitted], and that the Santa Clara County DA's role in the program was administrative. It therefore held that the DA acted in his county

1
2

capacity while administering the program and so was not entitled to state sovereign immunity.

3

*Del Campo,* 517 F.3d at 1073-74.

4

Further, California district attorneys' status under state law differs in

5

significant respects from that of the Alabama sheriffs discussed in *McMillian*. *See,*

6

*generally*, *Bishop Paiute Tribe*, 291 F.3d at 562-563 (contrasting California law to

7

the provisions of Alabama law considered relevant by the Supreme Court in

8

*McMillian*). Of particular importance, unlike the Alabama Sheriffs in *McMillian*,

9

accountability for California district attorneys' wrongdoing is rooted at the county

10

level:

11
12
13
14
15
16

The *McMillian* Court also gave weight to the fact that the Alabama Supreme Court had authority to impeach a county sheriff for neglect of office. By contrast, the California Constitution does not list sheriffs or district attorneys in Article IV, Section 18, which provides for impeachment of a variety of state officers before the Legislature. Instead, sheriffs and district attorneys can be removed from office following the accusation of the county grand jury.

17

*Id.* at 562.

18

Moreover, as discussed above, the provisions of California law dealing with

19

district attorneys and sheriffs are largely identical. *See also, Venegas v. County of*

20

*Los Angeles,* 32 Cal.4th 820, 831 (2004) ("Although *Pitts* involved district attorneys

21

rather than sheriffs, the court relied on statutes and analysis applying to both kinds of

22

officers"). But the Ninth Circuit, in analyzing these provisions, has consistently held

23

that California sheriffs act on behalf of the county, not the state. *See Brewster v.*

24

*Shasta County*, 275 F.3d 803, 807-808 (9th Cir 2001), *cert. denied sub nom.*, *Shasta*

25

*County v. Brewster*, 537 U.S. 814 (9th Cir. 2002); *Streit*, 236 F.3d at 555-556; *Cortez*

26
27

*v. County of Los Angeles*, 294 F.3d 1186, 1189-1192 (9th Cir. 2002).

28

### 3. The Traditional Five-Factor Analysis Demonstrates that Los Angeles County District Attorney Acted on Behalf of the County

Although *McMillian* dictates that federal courts must consider state statutory and constitutional provisions in determining who exercises control over the entity in question, it did not purport to eliminate the traditional test of Eleventh Amendment immunity. The Ninth Circuit has traditionally employed a five factor test to determine whether an entity is acting on behalf of the state for purposes of *Monell* liability: "(1)whether a money judgment would be satisfied out of state funds; (2)whether the entity performs central governmental functions; (3)whether the entity may sue or be sued in its own name; (4)whether the entity has authority to hold property in its own name; and (5)whether the entity has the corporate status of a state agency." *Eaglesmith v. Ward,* 73 F.3d 857, 860 (9th Cir. 1996). As recently as 2008, the Ninth Circuit still employed this five-factor analysis to determine whether an entity acted on behalf of the State. *Del Campo v. Kennedy*, 517 F.3d 1070, 1077 (9th Cir. 2008); *See also, e.g., Streit v. County of Los Angeles*, 236 F.3d 552, 566 (9th Cir. 2002)(applying five factor test). Under this traditional test, "the court looks to the way state law treats the entity." *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)(cited in *Streit, supra*).

In *Del Campo v. Kennedy,* the Ninth Circuit explained that the lower court had followed the principles of *Weiner* and held that the Santa Clara District Attorney was not entitled to state sovereign immunity because "the District Attorney's role in [a bad check diversion] program was administrative." *Id.* at 1073-74. Nonetheless, the District Attorney was dismissed for other reasons by the time the case reached the Ninth Circuit. *Id.* The Ninth Circuit employed the traditional five-factor test to determine whether the remaining defendants were entitled to sovereign immunity.

19

1
2
3

Thus, the five-factor test is an important tool for analyzing the liability of defendants who attempt to claim the mantel of sovereign immunity, is totally consistent with *McMillian*, and has consistently been employed by the Ninth Circuit post *McMillian*.

4
5
6
7
8
9
10
11
12
13

   The five-factor test is a "multi-factored *balancing* test." *Belanger v. Madera Unified School Dist*., 963 F.2d 248 (9th Cir. 1992)(emphasis supplied). Of these five factors, the Ninth Circuit has always given predominant - if not controlling - weight to the first factor, "who is legally bound to pay the judgment that is being sought." *See, e.g., Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997), amended 127 F.3d 1135 (9thCir.), cert. denied, 118 S.Ct. 1166 (1998); *Hale v. Arizona*, 993 F.2d 1387, 1399 (9thCir.), cert. denied, 510 U.S. 946 (1993); *Belanger v. Madera Unified School District*, 963 F.2d 248, 251 (9thCir. 1992), cert. denied, 507 U.S. 919 (1993).[5]

14
15
16
17
18
19
20

   In total, four of the five factors cut in Goldstein's favor. Financial responsibility, the first and most import factor, clearly support that this District Attorney acts on behalf of the County. Ultimately, the County, not the State, will be liable for any judgment obtained by Goldstein on the basis of the District Attorney's violation of his civil rights. *See* Cal. Gov't Code § 825; *see also Williams v. Horvath*, 16 Cal.3d 834, 847 (Cal. 1976).

21
22
23
24

   The only factor where there is any ambiguity is the second – whether the district attorney performs central governmental functions. However, the bald fact standing alone that the District Attorney's office enforces state law is not enough to

25
26
27
28

─────────────────

   [5]   The weight given to financial responsibility in this Circuit follows from *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394, 404 (1994), where the Supreme Court recognized the "vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations." *Id.*

entitle it to sovereign immunity. The Supreme Court "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivision such as counties and municipalities even though such entities exercise a 'slice of state power.'" *Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979). Indeed, if enforcing state law were enough to entitle an agency to Eleventh Amendment immunity, all law enforcement, including sheriffs and local police, would be immune since the vast majority of criminal law is state law.

The Supreme Court recognized in *Van de Kamp* that this case involves a case of administrative conduct, but emphasized that the absence of absolute prosecutorial immunity would "threaten to undermine the necessary independence and integrity of the prosecutorial decision-making process." 129 S.Ct. at 864. This policy consideration does not apply in the context of Eleventh Amendment immunity. There is no policy favoring finding that an entity is a state rather than a local actor. The fact that the Eleventh Amendment analysis is a balancing test, whereas the absolute immunity test is a functional one, is significant.

As *Van de Kamp* demonstrates, if the conduct at issue touches to any degree on the judicial phase of the criminal process, it qualifies for absolute immunity. On the other hand, for an Eleventh Amendment analysis under *McMillian*, a balancing test is employed, and in that balancing test, the financial responsibility for a judgment is the most critical factor (see discussion *infra*), whereas it has no applicability to an absolute immunity analysis. The Supreme Court has characterized this case as one involving "a certain kind of administrative obligation – a kind that itself is directly connected with the conduct of a trial." 129 S.Ct. at 862. Accordingly, this is a mixed case involving administrative and prosecutorial aspects. In such a situation, this Court must determine, in light of Eleventh Amendment

21

policy considerations, whether the District Attorney's Office, on balance, was a county or state actor.

This case can fairly be characterized as administrative inaction touching on prosecutorial functions. Given that characterization, the conduct is primarily administrative, and the traditional five factor test weighs in favor of the DA's Office functioning as a County actor. This conclusion is reinforced by the fact that the only Ninth Circuit cases to address the issue are *Weiner* and *Botello*. *Weiner,* although concluding that the District Attorney was a state actor in that case, held that "under California law a district attorney acts as a county officer for some administrative purposes and a state officer when deciding whether to prosecute an individual." *Botello*, 413 F.3d at 979, citing to *Weiner,* 210 F.3d 1030-31.  Here, where the issue is the failure to establish an administrative information management system with regard to informant cooperation and benefits, the inaction is that of the District Attorney in his capacity as a County officer.

In conclusion, the District Attorney of Los Angeles is the final policymaker for Los Angeles County with regard to the administrative practices in this case.  The supervision for the District Attorney's policies is ultimately rooted in the County: the County voters, the County grand jury, and the purse-strings of the County Board of Supervisors.

## E.   DELIBERATE INDIFFERENCE TO A WIDESPREAD CUSTOM AND PRACTICE TRIGGERS COUNTY LIABILITY

In *McMillian* the Supreme Court took pains to note that it did not call into question the Supreme Court's prior holdings that a local government was liable for widespread practices and customs that have the force of official policy within the

local government's jurisdiction. *McMillian* at 796 (citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (plurality opinion)).

> The final concern of petitioner and his amici is that state and local governments will manipulate the titles of local officials in a blatant effort to shield the local governments from liability.   But such efforts are already foreclosed by our decision in *Praprotnik.* See 485 U.S., at 127, 108 S.Ct., at 926 (plurality opinion) ("[E]gregious attempts by local governments to insulate themselves from liability for unconstitutional policies are precluded" by allowing plaintiffs to prove that "a widespread practice" has been established by " 'custom or usage' with the force of law").

*McMillian* at 796.

The case at bar represents the archetypal example of just such a pattern and practice case.  The Los Angeles District Attorney's office manifest a "deliberate and informed declination to take the action necessary to curtail the misuse of jail house informant testimony," in the words of the County Grand Jury – to a widespread, longstanding practice of misusing jailhouse informant testimony throughout the County law enforcement system. SAC ¶ 103. In the face of these violations, the District Attorney failed to create any type of system to track benefits or take any other remedial steps. In contrast to the Supreme Court's decision in *Van De Kamp v. Goldstein*, which focused on the prosecutorial discretion necessary to determine what information is tracked in such a system, Goldstein alleged in his Complaint that no system existed at all.

*McMillian* involved a single act of a sheriff in a particular case. The case at bar involves a widespread pattern of activity within a local government. This is exactly what was intended to be addressed by the doctrine of custom and practice discussed in *Prapotnik* and explicitly supported in *McMillian*.

### III.

### CONCLUSION

Mr. Goldstein has brought a claim against the County of Los Angeles because of administrative conduct which resulted in a custom and practice that led to his unlawful 24-year incarceration for a crime that he did not commit.  Precisely because this was an administrative failure to create any policy, it is a custom and practice which had a consistent and predictable effect on many prosecutions over a protracted period of time. This does not, however, transform this administrative conduct into a prosecutorial policy.

The Supreme Court's concern when granting absolute immunity in *Van De Kamp v. Goldstein* was unequivocally on the potential chilling effect a lawsuit against these prosecutors would have on the implementation of future legal decisions reflecting training and developing a central index.  These concerns are not at issue in the claims against the entity – the County of Los Angeles. The deliberate indifference attributed to the government entity in failing to create a central index, as mandated by *Giglio v. United States*, 405 U.S. 150 (1972), is exactly the type of conduct which *Monell* liability was created to address.

\\

\\

\\

\\

\\

\\

\\

\\

24

Based on every published decision which universally holds that administrative conduct of a district attorney does not trigger sovereign immunity, in conjunction with a detailed analysis of California law which demonstrates that a California district attorney engaged in administrative conduct acts on behalf of his / her respective county, Mr. Goldstein respectfully requests the County's Motion for Judgment on the Pleadings be denied.

Respectfully submitted,

KAYE, McLANE & BEDNARSKI, LLP

DATED: March 16, 2009        By_____/S/_____

RONALD O. KAYE
Attorney for Plaintiff
Thomas Lee Goldstein